IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DR. MOHAMED ELNADI,
 *Plaintiff and Counterclaim*
 *Defendant,*

v.            Civil Action No. ELH-12-1762

UPINDER SINGH, DDS, PC,
 *Defendant and Counterclaimant.*

**MEMORANDUM OPINION**

This case arises out of an employment dispute between a dentist, Dr. Mohamed Elnadi, plaintiff and counterclaim defendant, and his former employer, Upinder Singh, P.C. ("Singh"), defendant and counterclaimant, a dentistry practice.[1] Dr. Elnadi filed a six-count Complaint (ECF 1) against defendant, seeking to recover damages based on breach of contract; "loss of collection," under Md. Code (2008 Repl. Vol., 2012 Supp.), Labor & Empl. §§ 3-501, *et seq.*; unjust enrichment; "fraud-intentional misrepresentation"; negligent misrepresentation; and promissory estoppel. He claims, *inter alia*, that Singh failed to compensate him fully under the terms of his employment agreement, and that Singh wrongfully declined to renew his employment agreement, despite promising to do so. Defendant filed an Answer and Counterclaim ("Counterclaim") (ECF 7), alleging that plaintiff breached his employment agreement by, *inter alia*, "failing to offer competent care to ... patients and adhere to ethical practices," and "exhibiting unprofessional behavior in the workplace." Counterclaim ¶¶ 4-5.

---

[1] The caption of the Complaint refers to "Upinder Singh, DDS, PC," But, Singh avers that it was "incorrectly" named, and that the correct name is "Upinder Singh, P.C." *See* Defendant's Answer and Counterclaim at 1 n.1 (ECF 7).

Defendant claims that, as a result of plaintiff's inadequate dental care, defendant has had to repair dental work for affected patients, at no cost to the patients, and thus Singh has suffered damages in excess of $100,000. *See id.* ¶¶ 6-12.[2]

Plaintiff has filed a motion dismiss the Counterclaim for lack of jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), and for failure to state a claim, under Fed. R. Civ. P. 12(b)(6). *See* Motion to Dismiss Counterclaim ("Motion," ECF 18). His Motion is supported by a memorandum of law ("Memo," ECF 18-1). In particular, plaintiff maintains that the Counterclaim is a "dental malpractice action," and is thus subject to the Maryland Health Care Malpractice Claims Act ("HCMCA" or "Act"), Md. Code (2013 Repl. Vol.), Cts. & Jud. Proc. ("C.J."), §§ 3-2A-01 *et seq*. *See* Motion ¶ 3. According to plaintiff, the Counterclaim "was improperly filed in this action as it was not previously filed in the Health Care Alternative Dispute Resolution Office" ("HCADRO"), as required by the Act. *See* Motion ¶ 4. Defendant opposes the Motion ("Opposition" or "Opp.," ECF 21), maintaining that the Counterclaim does not fall within the scope of the HCMCA.

The issues have been fully briefed, and no hearing is necessary to resolve them. *See* Local Rule 105.6. For reasons that follow, I will grant the Motion, without prejudice.

**Factual Background[3]**

Dr. Elnadi and Singh entered into a Professional Employment Agreement (the "Agreement," ECF 7-1), for the period of August 1, 2010 through February 1, 2012.

---

[2] In light of diversity of citizenship, the Court has subject matter jurisdiction under 28 U.S.C. § 1332.

[3] The factual background is drawn solely from the Counterclaim. The allegations of plaintiff's Complaint are not pertinent to the Motion.

- 2 -

Counterclaim ¶ 2. "Pursuant to the Agreement, [Dr. Elnadi] was charged with rendering professional services as a dentist to the very best of his ability and complying with all requirements, directions, requests, rules, and regulations made by [Singh]." *Id.* ¶ 3; *see* Agreement ¶ 3 ("Duties"). "Following the expiration of the Agreement, patients of [Dr. Elnadi] have presented to [Singh] with complaints about [Dr. Elnadi] and his dental work . . . ." Counterclaim ¶ 6. Singh avers: "The pain and sensitivity complained of by [Singh's] patients was caused by [Dr. Elnadi's] lack of patient care." *Id.* ¶ 7.

As a result, Singh contends that it "has had to fix and repair dental work performed by [Dr. Elnadi] . . . at no cost to the patient and at a substantial loss to [Singh]." *Id.* ¶ 8. For example, Singh avers that Dr. Elnadi "installed crowns on . . . patients without first removing tooth decay." *Id.* ¶ 9. Similarly, Singh contends that it "was forced to perform a root canal in one particular case" that it "would not have had to perform . . . had [Dr. Elnadi] adhered to the standard of care expected to [sic] dentists." *Id.* ¶ 10. Singh also contends that it "has incurred laboratory and other costs in treating patients for pain and sensitivity caused by [Dr. Elnadi's] lack of patient care." *Id.* ¶ 11. According to defendant, it "has been damaged in excess of $100,000." *Id.* ¶ 12.

### Standard of Review

Dr. Elnadi filed his motion under Rule 12(b)(1), arguing that the court lacks subject matter jurisdiction. He has also moved to dismiss under Rule 12(b)(6), for failure to state a claim. I will construe the motion as one under Rule 12(b)(6), because plaintiff errs in asserting that this Court lacks subject matter jurisdiction.

Subject matter jurisdiction pertains to "a court's adjudicatory authority." *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004); *see also Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 89 (1998) ("subject-matter jurisdiction" refers to "the courts' statutory or constitutional *power* to adjudicate the case") (emphasis in original); *Landgraf v. USI Film Prods.*, 511 U.S. 244, 274 (1994) ("[J]urisdictional statutes 'speak to the power of the court rather than to the rights or obligations of the parties.'") (Citation omitted). "It is well established that before a federal court can decide the merits of a claim, the claim must invoke the jurisdiction of the court." *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006). However, "[a] statutory condition that requires a party to take some action before filing a lawsuit is not automatically 'a jurisdictional prerequisite to suit.'" *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 130. S Ct. 1237, 1246 (2010) (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)); *see also Rice v. Rivera*, 617 F.3d 802, 810-11 (4th Cir. 2010) (distinguishing "jurisdictional rules" from "claims-processing rules," which "'merely prescribe the method by which the jurisdiction granted the courts by Congress is to be exercised'") (quoting *United States v. Hartwell*, 448 F.3d 707, 717 (4th Cir. 2006)).

The Maryland Court of Appeals has made clear that certain requirements under the HCMCA, discussed in more detail, *infra*, are conditions precedent to the filing of a medical malpractice suit in court, but do not constitute a jurisdictional limitation. *See Carroll v. Konits*, 400 Md. 167, 172, 929 A.2d 19, 22 (2006) (holding that, under the Act, the filing of a certificate of expert is a "condition precedent" to filing suit); *Witte v. Azarian*, 369 Md. 518, 527, 801 A.2d 160, 166 (2002) (recognizing that the arbitration process under the Act was intended as a condition precedent to filing a suit in court); *Crawford v. Leahy*, 326 Md. 160, 165, 604 A.2d 73,

75 (1992) ("The mandatory arbitration requirement does not divest courts of subject matter jurisdiction over health claims, but rather creates a condition precedent to the institution of a court action."); *Oxtoby v. McGowan*, 294 Md. 83, 91, 447 A.2d 860, 864-65 (1982) ("The Act … does not take away the subject matter jurisdiction of a circuit court to hear and render judgments in cases involving claims which fall within the Act."); *see also Brooks v. Md. Gen. Hosp., Inc.*, 996 F.2d 708, 711-12 (4th Cir. 1993 (stating that the Act "requires, as a condition precedent to filing a malpractice claim in court, that the claimant pursue arbitration"). Further, 28 U.S.C. § 1332 vests this Court with the authority, in general, to adjudicate a dental malpractice claim when the criteria for diversity of citizenship are satisfied.

Therefore, I will consider plaintiff's motion under Rule 12(b)(6). *See, e.g.*, *Hawes v. Network Solutions, Inc.*, 337 F.3d 377, 383 (4th Cir. 2003) (explaining that a district court should consider a motion to dismiss improperly filed under Rule 12(b)(1), when predicated on non-jurisdictional grounds, as a motion to dismiss under 12(b)(6)); *Miller v. Herman*, 600 F.3d 726, 732 (7th Cir. 2010) (construing motion to dismiss under Rule 12(b)(1) as motion to dismiss under Rule 12(b)(6), where movant conflated non-jurisdictional precondition to suit with jurisdictional limitations); *see also Montana-Dakota Utils. Co. v. Nw. Pub. Serv. Co.*, 341 U.S. 246, 249 (1951) ("As frequently happens where jurisdiction depends on subject matter, the question whether jurisdiction exists has been confused with the question whether the complaint states a cause of action."). Dismissal, without prejudice, is appropriate under Rule 12(b)(6), for the reasons set forth below.

**Discussion**

A.

The HCMCA provides: "A person having a claim against a health care provider for damage due to a medical injury shall file the claim with the Director [of the Health Care Alternative Dispute Resolution Office]" for arbitration. C.J. § 3-2A-04(a)(1)(i); *see generally id.* § 3-2A-04 (outlining requirements for filing and responding to a claim); *id.* § 3-2A-05 (outlining arbitration procedures). The Act is intended to provide a screening mechanism to "'ferret[] out unmeritorious claims,'" thereby reducing the cost of malpractice insurance and the overall cost of health care. *Grp. Health Ass'n, Inc. v. Blumenthal*, 295 Md. 104, 113, 453 A.2d 1198, 1204 (1983) (citations omitted); *see also Brooks*, 996 F.2d at 711-12 (discussing purposes of HCMCA); *Cannon v. McKen*, 296 Md. 27, 33, 459 A.2d 196, 199-200 (1983) (recounting circumstances surrounding passage of the Act); *Oxtoby*, 294 Md. at 85, 447 A.2d at 862.

Notably, the Act "encourages, but does not mandate, arbitration of medical malpractice claims." *Wilson v. Gottlieb*, 821 F. Supp. 2d 778, 786 (D. Md. 2011). Nevertheless, a "person having a claim against a health care provider for damage due to a medical injury" must first file the claim with the HCADRO, C.J. § 3-2A-04(a)(1)(i), which is a unit of the executive branch of Maryland's state government. *Id.* § 3-2A-03(a); *see also Wilson*, 821 F. Supp. 2d at 784. In turn, the director of the HCADRO must cause the claim to be served on the defendant health care provider.[4] C.J. § 3-2A-04(a)(1)(i), (ii).

---

[4] "[I]f the claim is against a physician, the Director shall forward copies of the claim to the State Board of Physicians." C.J. § 3-2A-04(a)(1)(i).

Ordinarily, within 90 days after filing a claim, the claimant must file a "certificate of a qualified expert," accompanied by a report of the expert, attesting "to departure from standards of care, and that the departure from standards of care is the proximate cause of the alleged injury." *Id.* § 3-2A-04(b)(1)(i)(1), (b)(3)(i); *see, e.g., Carroll*, 400 Md. at 177-80, 929 A.2d at 25-26.[5] A health care provider who disputes liability must file a similar expert certificate and report, "attesting to compliance with standards of care, or that the departure from standards of care is not the proximate cause of the alleged injury." C.J. § 3-2A-04(b)(2)(i).[6]

Following the filing of the claimant's expert certificate, the HCADRO and the parties select an arbitration panel, in accordance with C.J. §§ 3-2A-03(c) & 3-2A-04(c) to (f). Unless the parties choose otherwise, the claim is then heard by the arbitration panel, after a fixed period of time for discovery. *See id.* § 3-2A-05. The arbitration proceedings are governed by the Maryland Rules, which are the rules of procedure generally applicable in Maryland judicial proceedings, *see id.* §§ 3-2A-02(d), 3-2A-05(b)(2), and are subject to the requirements that apply generally to arbitration proceedings under the Maryland Uniform Arbitration Act ("MUAA"), *id.* §§ 3-201 *et seq.* This includes decision making and exercise of power by a majority of the arbitration panel, *see id.* §§ 3-212, 3-215; an evidentiary hearing held by the arbitration panel, with notice to the parties, *see id.* § 3-213; the rights to be heard, to present evidence, and to cross-examine witnesses, *see id.* § 3-214; the right to representation by an attorney, *see id.* § 3-216; and the authority of the arbitration panel to exercise subpoena power and administer oaths,

---

[5] An expert certificate is not required if "the sole issue in the claim is lack of informed consent." C.J. § 3-2A-04(b).

[6] In the case of a claim against a physician, the HCADRO sends copies of the expert certificates and reports to the State Board of Physicians. C.J. § 3-2A-04(b)(6).

*see id.* § 3-217; *id.* § 3-2A-05(b)(1) (incorporating C.J. §§ 3-212 to 3-217 into the Act).[7] Moreover, the "technical rules of evidence" do not apply. *Id.* § 3-214(b).

Under the Act, arbitration is limited in several important ways. First, the parties can opt out of arbitration entirely. *Wilson*, 821 F. Supp. 2d at 785. At any time between the filing of the claimant's expert certificate and sixty days after all parties have filed expert certificates, any party may waive arbitration unilaterally. *See* C.J. § 3-2A-06B(a) to (d)(1). Second, at any time before the claim is heard by the panel, the parties can jointly waive arbitration. *See id.* §§ 3-2A-06A(a), (b), 3-2A-06B(d)(2).[8] In either event, within sixty days after arbitration is waived, the plaintiff must file a complaint in the appropriate court, either a Maryland circuit court or the federal court. *See id.* §§ 3-2A-06A(c), 3-2A-06B(f).[9] During the ensuing litigation, the parties are permitted, but not required, to engage in a non-binding "neutral case evaluation" to be performed by a panel selected through the HCADRO, in much the same manner as an arbitration. *See id.* §§ 3-2A-06A(f), 3-2A-06B(i).

If the parties do not waive arbitration, an evidentiary proceeding ensues. *See* C.J. §3-2A-05. Any party may reject the arbitration panel's award "for any reason." *Id.* § 3-2A-06(a). The

---

[7] A panel's subpoena may only be enforced by obtaining a court order. *See* C.J. § 3-217(c).

[8] Under a prior version of the Act, under which the HCADRO was denominated as the Health Claims Arbitration Office ("HCAO"), only a joint waiver of arbitration was permissible. *See* Md. Code (1989 Repl. Vol., 1994 Supp.), C.J. §§ 3-2A-01 *et seq.* The provision permitting a party unilaterally to waive arbitration was enacted by 1995 Md. Laws, ch. 582.

[9] If arbitration is waived before the defendants have filed expert certificates and reports, C.J. § 3-2A-06B(b)(3) and (c)(3) require that the defendants file their expert certificates and reports in the judicial proceeding. However, in *Willever v. United States*, 775 F. Supp. 2d 771, 778-86 (D. Md. 2011), Judge Roger Titus held that a defendant's expert certificate and report requirement under the Act is supplanted by the expert disclosure provisions of Fed. R. Civ. P. 26(a)(2).

party who rejects the award must file a notice of rejection of the award with the panel and the HCADRO, ordinarily within thirty days after the award is issued, *see id.*, and concurrently must "file an action in court to nullify the award." *Id.* § 3-2A-06(b)(1). A court action to nullify an award from an HCADRO arbitration panel is, in essence, a *de novo* proceeding. The case may be tried to a jury or to the court. *Id.* § 3-2A-06(b)(2). However, the panel's award ordinarily "is admissible as evidence in the judicial proceeding" and is "presumed to be correct," with "the burden . . . on the party rejecting it to prove that it is not correct." *Id.* § 3-2A-06(d). On the other hand, if no party rejects the arbitration panel's award, the award becomes "final and binding on the parties." *Id.* § 3-2A-05(i). In that circumstance, the director of the HCADRO is authorized to submit the award for confirmation by the appropriate Maryland circuit court, in accordance with the procedure for confirmation of arbitration awards under the MUAA. *Id.*

As the above discussion reflects, "[t]he only truly mandatory aspects of the Malpractice Claims Act procedure are submission of the claim to the HCADRO *in advance of filing a complaint in a court*" and, "in most cases, each party's submission of a certificate and report of a qualified expert." *Wilson*, 821 F. Supp. 2d at 786 (emphasis added). Nonetheless, these particular requirements—submission of the claim to the HCADRO and submission of the expert report—are conditions precedent to the filing of a medical malpractice suit in court. *See Carroll*, 400 Md. at 172, 929 A.2d at 22; *Witte*, 369 Md. at 527, 801 A.2d at 166; *McCready*, 330 Md. at 512, 624 A.2d at 1257; *Crawford*, 326 Md. at 165, 604 A.2d at 75 (1992); *see also Barber v. Catholic Health Initiatives*, 180 Md. App. 409, 419, 951 A.2d 857, 863, *cert. denied*, 406 Md. 192 (2008). A claimant's failure to follow the HCMCA prior to initiating suit in court will result in dismissal, without prejudice. *Lewis v. Waletzky*, 576 F. Supp. 2d 732, 738 (D. Md. 2008); *see*

*Oxtoby*, 294 Md. at 91, 447 A.2d at 865 ("[T]his Court will, *sua sponte*, . . . order an action dismissed where the litigants have not followed the special statutory procedure."); *see also Redding v. Ameriprise Auto & Home Ins.*, Civil Action No. DKC 11-3141, 2012 WL 1268327, at *6 (D. Md. Apr. 13, 2012).

B.

As indicated, plaintiff moves to dismiss the Counterclaim because it was "not previously filed in the [HCADRO]," as required under the Act, C.J. §§ 3-2A-01 *et seq.* Motion ¶¶ 4-5. Defendant counters that the Counterclaim is a "breach of contract" claim, not a medical malpractice claim, and therefore is not subject to the Act. Opp. at 3. Moreover, defendant insists that it "is not a 'person' as contemplated by the Act," and that the Counterclaim does not assert a claim for "medical injury." *Id.*

The HCMCA delineates the claims to which it applies in C.J. § 3-2A-02(a)(1). It states:

> All claims, suits, and actions, including cross claims, third-party claims, and actions under Subtitle 9 of this title, *by a person against a health care provider for medical injury allegedly suffered by the person* in which damages of more than the limit of the concurrent jurisdiction of the District Court are sought are subject to and shall be governed by the provisions of this subtitle.

*Id.* (emphasis added).

The Act defines "medical injury" as an "injury arising or resulting from the rendering or failure to render health care." *Id.* § 3-2A-01(g). "Health care provider" includes "a dentist." *Id.* § 3-2A-01(f).

A court should evaluate a claim based on the "'aggregate of operative facts' giving rise to the action," not the "narrow concept of a 'cause of action.'" *Id.* at 112, 453 A.2d at 1203 (quoting *White v. Land Homes Corp.*, 251 Md. 603, 610-611, 248 A.2d 159 (1968)). To

determine the applicability of the HCMCA, "the critical question is whether the claim is based on the rendering or failure to render health care and not the label placed on the claim, that is, tort or contract." *Brown v. Rabbit*, 300 Md. 171, 175, 476 A.2d 1167, 1169 (1984). More specifically, "[i]f health care is or should be rendered and damage results therefrom, then it is a claim under the Act . . . ." *Id.* at 175, 476 A.2d at 1169-70; *see also Cannon*, 296 Md. at 36, 459 A.2d at 201 ("[T]he Act covers only those claims for damages arising from the rendering or failure to render health care where there has been a breach by the defendant, in his professional capacity, of his duty to exercise his professional expertise or skill."). Thus, the Maryland Court of Appeals has expressly rejected the proposition that the Act categorically excludes claims sounding in contract. *See Brown*, 300 Md. at 174-76, 476 A.2d at 1169-70 (holding that a patient's claim for breach of warranty against her physician, arising out of representations pertaining to medical treatment, was covered by the Act, and rejecting defendant's argument that the Act does not encompass contract claims).

Although the HCMCA refers in C.J. § 3-2A-02(a)(1) to claims by a "person," the term "person" is not defined by the HCMCA. But, the Act is not limited to claims made by "an individual human being who directly suffered a personal injury." *Adler v. Hyman*, 334 Md. 568, 574, 640 A.2d 1100, 1103 (1994) (applying Act to claim for contribution by malpractice insurer); *see Blumenthal*, 295 Md. at 115-16, 453 A.2d at 1205 (applying Act to employer's third party claim for indemnification against treating physician). Article 1, § 15 of the Maryland Code Ann. (1957, 2011 Repl. Vol., 2012 Supp.) is entitled: "Person to include business entities." It provides: "Unless such a construction would be unreasonable, the word person shall include corporation . . . ." And, Maryland Code (2007 Repl. Vol., 2012 Supp.), Corps. & Assocs. § 5-

101(f), defines a "professional corporation" as a "corporation organized under this subtitle for the purpose of rendering professional services." Accordingly, Singh is subject to the provisions of the Act, even though it is a "P.C.".

A claim that "cannot be sustained independently of proof of negligence on the part of a health care provider" is subject to the Act. *Adler*, 334 Md. at 574, 640 A.2d at 1103; *see Brown*, 300 Md. at 175, 476 A.2d at 1170; *Blumenthal*, 295 Md. at 112, 453 A.2d 1198; *Weidig v. Crites*, 323 Md. 408, 417, 593 A.2d 1094, 1098 (1991). In my view, the Counterclaim falls squarely within the ambit of the Act, notwithstanding its label as a claim for breach of contract; it clearly constitutes a claim for recovery based on physical injuries resulting from Dr. Elnadi's alleged failure to render proper health care to his dental patients.

*Group Health Association, Inc. v. Blumenthal*, *supra*, 295 Md. 104, 453 A.2d 1198, is instructive. In that case, Ms. Blumenthal alleged that her doctor had been negligent in providing prenatal care. *Id.* at 107, 453 A.2d at 1201. She and her husband filed a malpractice claim against the doctor with the HCAO,[10] to initiate arbitration. *Id.* at 107-08, 453 A.2d at 1201. However, they also filed a complaint in federal court against the doctor's employer, a health maintenance organization, based on a theory of *respondeat superior*. *Id.* at 108, 453 A.2d at 1201. In turn, the employer filed a third-party complaint against the doctor "for indemnification and contribution." *Id.* at 109, 453 A.2d at 1202. The federal court certified several questions to the Maryland Court of Appeals, including, in pertinent part: (1) whether the Blumenthals' action against the employer was subject to mandatory arbitration, and (2) whether the employer's third-party claim against the doctor was subject to mandatory arbitration. *Id.*

---

[10] As indicated in note 8, *supra*, the HCAO was the statutory equivalent of the HCADRO.

The Maryland Court of Appeals held that both claims were subject to the Act. Although the employer did not qualify as a "health care provider" under the Act, the court determined that C.J. "§ 3–2A–02(a) encompasses a claim of malpractice by a health care provider, whether it forms the basis of a suit against that health care provider or a suit against a non-health care provider under the doctrine of *respondeat superior*." *Id.* at 112, 453 A.2d at 1203. As the court explained, the Blumenthals "hoped to prove that [the doctor] and other . . . employees were negligent in treating Mrs. Blumenthal, and that . . . their employer is vicariously liable for that negligence." *Id.* at 111, 453 A.2d at 1203. Thus, "the aggregate of operative facts [was] . . . the alleged malpractice of the health care providers." *Id.*

And, of import here, the Maryland Court of Appeals held that the employer's third-party claim for indemnification "clearly" fell with the purview of the Act. *Id.* at 116, 453 A.2d at 1205. In the Court's view, the employer, though a corporate entity, was nonetheless a "person" under the Act. *Id.* Concluding that "the third-party claim is for a 'medical injury,'" *id.*, the court explained: "[I]f [the doctor] is found to have been negligent in rendering medical care to Mrs. Blumenthal, and liability for that negligence is imputed to the [employer], then [the employer] will have suffered a medical injury . . . . [The employer's] injury will have arisen out of [the doctor's] rendering of medical care." *Id.*

*Adler v. Hyman*, *supra*, 334 Md. 568, 640 A.2d 1100, also provides guidance. In that case, a decedent's family initiated arbitration of malpractice claims in the HCAO against a doctor for negligence relating to the care of the decedent. *Id.* at 570, 640 A.2d at 1101. The doctor's malpractice insurer settled the claims, and filed suit in state court for contribution against a second doctor, alleging that he was a joint tortfeasor. *See id.* The second doctor moved

to dismiss the action, on the ground that the claim for contribution was subject to mandatory arbitration under the Act. *See id.* The Maryland Court of Appeals agreed. It reasoned that because the insurer's claim could not "be sustained independent of proof of negligence on the part of a health care provider," *i.e.*, the second doctor, the claim fell within the scope of the Act. *Id.* at 574, 640 A.2d at 1101.

Singh alleges that Dr. Elnadi breached the Agreement because he failed to adhere to standard dental practices. And, because of such errors, Singh claims it was obligated to provide free dental work to plaintiff's patients. *See* Counterclaim ¶¶ 6-11. For example, Singh claims that Dr. Elnadi "breached the Agreement by failing to offer competent care." *Id.* ¶ 4. The Counterclaim also states that Dr. Elnadi "installed crowns on [Singh's] patients without first removing tooth decay." *Id.* ¶ 9. As a result of Dr. Elnardi's alleged negligence, Singh claims that it "was forced to perform a root canal in one particular case," and that it "would not have had to perform the root canal had [Dr. Elnadi] *adhered to the standard of care expected to* [sic] *dentists*." *Id.* ¶ 10 (emphasis added). Although Singh also alleges that Dr. Elnadi breached the Agreement by failing to "adhere to ethical practices" and "by exhibiting unprofessional behavior in the workplace," *id.* ¶¶ 4-5, the damages allegedly suffered appear to consist solely of the costs incurred by Singh in treating Dr. Elnadi's patients. *Id.* ¶ 11.

Plainly, Singh's contractual claim is entirely dependent upon proof that Dr. Elnadi was negligent in regard to his dental care. Put another way, the "aggregate of operative facts" through which defendant intends to prove its breach of contract claim consists of the care rendered by a health care provider, Dr. Elnadi. *See Blumenthal*, 295 Md. at 112, 453 A.2d at

1203. Dr. Elnadi's alleged breach of the Agreement cannot "be sustained independent of proof of [Dr. Elnadi's] negligence." *Adler*, 334 Md. at 574, 640 A.2d at 1103.

Defendant's contention that it has not suffered a "medical injury" under the Act is unavailing. To be sure, Singh did not personally suffer physical harm as a patient of Dr. Elnadi's. Nonetheless, the harm alleged in the Counterclaim constitutes a "medical injury" because, as in *Blumenthal* and *Adler*, it arises out of Dr. Elnadi's alleged dental malpractice. *See Blumenthal*, 295 Md. at 116, 453 A.2d at 1205; *Adler*, 334 Md. at 574, 640 A.2d at 1101. As indicated, in *Adler* the insurance company filed suit against an alleged joint tortfeasor for contribution as to payments made in a settlement with an injured patient. *See* 334 Md. at 574, 640 A.2d at 1101. In other words, the medical injury in *Adler* was the cost of making whole those patients allegedly harmed by a doctor's negligent medical care. Similarly, Singh incurred the costs of providing dental care to patients who were allegedly injured as a result of plaintiff's negligent dental care. As in *Adler*, the Counterclaim asserts a claim for "medical injury" under the Act.

*Blumenthal* and *Adler* also dispose of defendant's contention that it is not subject to the Act because it is not a "person" who can suffer a "medical injury." The claimants in those cases were corporate entities, and each was held to be a "person" that could suffer a "medical injury." *See Adler*, 334 Md. at 574, 640 A.2d at 1101 (holding insurance company to be a "person"); *Blumenthal*, 295 Md. at 116, 453 A.2d at 1205 (holding corporation to be a "person," because "[t]he rules of interpretation for the Maryland Code provide that the 'word person shall include corporation'") (quoting Md. Code Ann. (1957, 1981 Repl. Vol.), Art. 1, § 15). Thus, Singh is a

person who has suffered a medical injury within the meaning of the Act, despite its status as a professional corporation.

Finally, I note that the Maryland Court of Appeals has stated that "the Health Care Office possesses the authority to determine whether a claim constitutes a 'medical injury' in a borderline case and is therefore subject to the Health Claims Act." *Swam v. Upper Chesapeake Med. Ctr.*, 397 Md. 528, 541, 919 A.2d 33, 40 (2007). Consequently, if a "court is unable to conclude that the allegations remove the claim from the Act's coverage, the court should not exercise jurisdiction over the claim until a malpractice claim is filed with the [HCADRO]. The [HCADRO] initially will determine if the claim alleges a 'medical injury' and is therefore subject to the Act." *Goicochea*, 345 Md. at 728, 694 A.2d at 479; *see Jewell v. Malamet*, 322 Md. 262, 276, 587 A.2d 474, 481 (1991) ("Inasmuch as we cannot say that the allegations suffice to take [the claim] out of the Act, the proper initial forum is that provided under the Act."). Therefore, to the extent that the Counterclaim presents a "borderline" case of medical injury, it should nonetheless be presented to the HCADRO before it is filed in court.

For the foregoing reasons, plaintiff's motion to dismiss will be granted, without prejudice. A separate Order follows, consistent with this Opinion.


Date: April 30, 2013　　　　　　　　　　　　/s/_____
　　　　　　　　　　　　　　　　　　　　　Ellen Lipton Hollander
　　　　　　　　　　　　　　　　　　　　　United States District Judge